UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERRARD JONES

    Plaintiff,

v.                                     Case No:  8:25-cv-01272-MSS-NHA

POPEYES LOUISIANA KITCHEN, INC, et. al.

    Defendants.
_____/

## REPORT AND RECOMMENDATION

I respectfully recommend that Plaintiff's motion to proceed without pre-paying the filing fee (Doc. 2) be denied without prejudice, and that his Complaint (Doc. 1) be dismissed, because Plaintiff has failed to plead facts that support a claim over which this Court has jurisdiction. However, because it is possible to cure the jurisdictional defect, I recommend that Plaintiff be allowed to amend his complaint.

### I.   Background

On May 19, 2025, Plaintiff Gerrard Jones filed a Complaint against Defendants Popeyes Louisiana Kitchen, Inc. and a woman named Michelle, a

Popeyes restaurant manager.[1] Doc. 1. Plaintiff also moved for permission to bring the lawsuit without pre-paying the filing fee. Doc. 2.

Plaintiff alleges that, on August 10, 2023, he purchased a meal at a Popeyes restaurant in Tampa, Florida. Doc. 1 at p. 6. Shortly after Plaintiff began to eat, a piece of chicken lodged in his throat. *Id.* Unable to dislodge it, Plaintiff informed a nearby employee that he was choking. *Id.*

At approximately 10:14 a.m., a person named Michelle—whom Plaintiff identifies as a Popeyes manager, and as a white woman—observed that Plaintiff was choking. *Id.*, p. 6. Michelle informed Plaintiff that she did not know how to perform the Heimlich maneuver and returned behind the counter. *Id.* Plaintiff assumed she was calling 911. *Id.*

Plaintiff then attempted to dislodge the chicken in his throat by repeatedly running into a wall. *Id.*, p. 7. He alleges that Michelle later emerged and remarked, "That Black boy is an idiot, running into the wall like that," before walking away again. *Id.* Plaintiff alleges that he hit the wall 8-to-12 more times, desperately trying to dislodge the chicken. *Id.*

---

[1] The headings of Plaintiff's complaint and motion to proceed without prepaying the filing fee name Fortis Risk Solutions, rather than Michelle, as a defendant. However, the body of the Complaint lists Michelle as the second defendant and indicates only that Fortis Risk Solutions "represents Popeyes" in some capacity, denied a claim associated with this incident, and is preserving evidence. Doc. 1 at p. 9. Plaintiff pleads no facts that would change the analysis in this recommendation if Fortis Risk Solutions were substituted for Michelle as a defendant.

Approximately seventeen minutes later, Plaintiff successfully dislodged the chicken. *Id.* Tampa Fire and Rescue personnel and Tampa Police Department officers arrived shortly thereafter. *Id.* Plaintiff alleges that Michelle told an officer, "That Black boy is an idiot, he was running himself into the wall." *Id.*

When Plaintiff asked Tampa Fire and Rescue why they took so long to respond, they informed him that they had received the call at 10:31 a.m. and had arrived within two and a half minutes. *Id.*, p. 8. Plaintiff contends that Michelle was aware of his medical emergency at 10:14 a.m. and unreasonably waited seventeen minutes to contact emergency services. *See id.*, pp. 8, 11.

Plaintiff further alleges that, following the incident, Michelle requested that the responding police officers trespass Plaintiff from the property. *Id.* p. 8. He claims that a white police officer to whom Michelle had said Plaintiff was a "Black boy idiot," threatened him with arrest for trespassing and informed Plaintiff that he had been officially trespassed from the premises. *Id.* pp. 8, 12.

Following the incident, Plaintiff went to Advent Hospital, where he received a CT scan, an MRI, X-rays, a neck brace, and medications for pain and anxiety. *Id.*, p. 8. He alleges that he was diagnosed with multiple injuries, including a head contusion, back and chest pain, a sprained wrist, a hip injury, vertigo, and neck pain, and subsequently underwent thirteen weeks of physical therapy. *Id.*, pp. 8–9. Plaintiff alleges that these injuries were caused by

Michelle's failure to promptly call 911. *Id.*, p. 9. Plaintiff further alleges that, because of the experience, he is now afraid to enter Popeyes' restaurants. *Id.*

Plaintiff brings three counts: (1) failure to train Michelle in the Heimlich maneuver, allegedly in violation of Fla. Stat. § 509.713; (2) negligence, based on Michelle's failure to timely call 911; and (3) racial discrimination, which the Court construes—based on references preceding the count—as a claim pursuant to 42 U.S.C. § 1983 that Defendants violated his rights under the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964 (*see* Doc. 1 at p. 3). *Id.*, pp. 10–13. Plaintiff seeks "nominal damages," $250,000 in compensatory damages, and $10 million in punitive damages. *Id.*, pp. 12–13.

## II. Legal Standard

The federal statute that governs the right to bring a lawsuit without pre-paying a filing fee, 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Accordingly, the statute permits a litigant to commence an action in federal court "by filing in good faith an affidavit stating . . . that he is unable to pay the costs of the lawsuit." *Id.* "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* To that end, section 1915 provides that a court shall dismiss a case if the court determines

that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous when a complaint lacks an arguable basis either in law or in fact. *Neitzke*, 490 U.S. at 325.

Federal courts must hold pro se filings (meaning those papers filed by a party who represents himself) to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). More specifically, a court must "provide[] pro se parties wide latitude when construing their pleadings and papers" and "use common sense to determine what relief the party desires." *S.E.C. v. Elliot*, 953 F.2d 1560, 1582 (11th Cir. 1992). Nonetheless, courts need not exempt pro se litigants from complying with the requirements imposed by the law and rules of procedure. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff describe what action a defendant took that violated the law. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard in Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Conclusions and characterizations of conduct are insufficient; a complaint must allege enough facts to show that each element of an offense is satisfied. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). The allegations in the complaint "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). In addition, Rule 10 requires that the complaint "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b).

Independent of the Court's duty under section 1915(e) to evaluate the claim of a party proceeding in forma pauperis, the Court also has an obligation to ensure that it has subject matter jurisdiction over a case. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

"Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000) (citing *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999)). First, federal courts have original jurisdiction over all civil actions

where (1) the matter in controversy exceeds $75,000, exclusive of interest and costs, and (2) the parties are citizens of different states; this is called diversity jurisdiction. 28 U.S.C. § 1332. Second, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States;" this is called federal question jurisdiction. 28 U.S.C. § 1331. A complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983).

### III. Analysis

Because all parties appear to be citizens of Florida, Plaintiff must rely on federal question jurisdiction to proceed in federal court. To invoke federal question jurisdiction, Plaintiff must state a claim in Count III, the only cause of action that plausibly presents a federal question; the other claims rest on state law. Should the Court have jurisdiction over Count III, it may extend supplemental jurisdiction over the other two counts, because they arise from the same case or controversy. 28 U.S.C § 1367(a). Thus, the Court's subject-matter jurisdiction over this case rests on the viability of Count III.

A. <u>Violation of 42 U.S.C. § 1983</u>

Liberally construed with his responses to Section II of the civil rights complaint form,[2] Count III alleges that Defendants violated 42 U.S.C. § 1983 by abridging his rights under the Fourteenth Amendment and under Title VII. Doc. 1 at pp. 12–13.

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he [ ] was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal punctuation and citations omitted). If the Court determines that Defendants were not acting under color of state law, the section 1983 claim must fail as a matter of law. 42 U.S.C. § 1983.

"Only in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). To subject private parties to a section 1983 claim, "one of the following three conditions [must be] met: (1) the State has coerced or at least

---

[2] Plaintiff lists "Civil Rights 1983, 1871, 14th Amendment, Civil Rights 1964 Title VII" in response to the question "If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials." Doc. 1. at p. 3.

significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) 'the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]' ('nexus/joint action test')." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *NBC, Inc. v. Communications Workers of America*, 860 F.2d 1022, 1026–27 (11th Cir. 1988)).

Defendant Popeyes is a privately owned business, and Defendant Michelle is a private individual employed by that business. Plaintiff pleads no facts suggesting that the State coerced or encouraged the conduct of which Plaintiff complains (presumably the failure to treat the Plaintiff with care, the use of derogatory language toward Plaintiff, and the request that Plaintiff be trespassed). Nor does Plaintiff plead facts suggesting that Defendants were performing a traditional public function.

Rather, Plaintiff states in Count III that Michelle's calling Plaintiff a "Black boy idiot," showed that "her actions and inactions were based upon and/or motivated by the fact of [Plaintiff] being a Black person, and her being white," and that her use of that term to try to convince a white police officer to have Plaintiff arrested or trespassed shows that her "actions/inactions were motivated by her hatred/malice towards me as a Black person." Doc. 1 at p. 12.

Perhaps Plaintiff intends to assert that the Tampa Police Department jointly participated in an unconstitutional act by telling Plaintiff he would be arrested for trespassing if he did not leave Popeyes' property. *Id.* at p. 8.

But, "[a] private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof." *Dye v. Radcliff*, 174 F. App'x 480, 483 (11th Cir. 2006). So, an "allegation that a private defendant misused a valid state statute does not state a cause of action under § 1983." *Id.* at 482; *see also Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor.").

To establish joint action sufficient to support a section 1983 claim, Plaintiff must allege facts showing that the Defendants and a state official reached an understanding or otherwise engaged in a conspiracy to violate his rights. *Lowe v. Aldridge*, 958 F.2d 1565, 1573 (11th Cir. 1992). Indeed, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons," not "merely string together the discrete steps" of a targeted process "without showing contacts between the [defendants] that could prove private and alleged state actors had 'reached an understanding' to violate [his]

rights." *See Harvey*, 949 F.2d at 1133 (citing *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984)).

According to the Complaint, Michelle told a police officer, "That Black boy is an idiot, he was running himself into the wall," before telling an officer to trespass Plaintiff from Popeyes' property. Doc. 1 at p. 7. Then, a police officer threatened him with arrest for trespassing and informed Plaintiff that he had been officially trespassed from the premises. *Id.* at p. 8.

In other words, the Complaint establishes that a private individual called upon law enforcement, potentially to misuse a state statute. But Plaintiff does not plead, or even conclusorily assert, that Michelle and the police officer had an illegal agreement to violate Plaintiff's rights such that Defendants and the officer were joint participants.

Accordingly, the Complaint lacks the facts needed to show that Defendants acted under color of state law. For this reason, the section 1983 claim fails to state a claim upon which relief can be granted.[3]

---

[3] Nor could Plaintiff bring his Fourteenth Amendment claim without alleging that Defendants were acting outside the color of state law, because the "under color of [state] law" requirement under 42 U.S.C. § 1983 "is considered *in pari materia* with the Fourteenth Amendment's state action requirement;" that is, it "has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1276 n. 4 (11th Cir. 2003) (citing and quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982)); *see Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936 (1982) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of

B. <u>Remaining Claims</u>

Unless Plaintiff pleads facts sufficient to support a federal claim, the Court cannot exercise supplemental jurisdiction over the remaining state law claims. Accordingly, I do not reach the merits of Counts I and II.

## IV. Conclusion

For the reasons stated above, I respectfully RECOMMEND:

(1) Plaintiff's motion to proceed in forma pauperis (Doc. 2) be DENIED without prejudice (meaning he could refile it);

(2) Plaintiff's complaint (Doc. 1) be DISMISSED without prejudice, subject to the right of Plaintiff to file, within 30 days of the District Court's order of dismissal, an amended complaint that addresses the problems discussed in this order, and an amended motion to proceed in forma pauperis; and

(3) At the close of the 30-day period, if Plaintiff has failed to file the amended documents, Plaintiff's case be dismissed with prejudice,

---

the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'").

And, Plaintiff's Title VII discrimination fails for the additional reason that, unlike Title II of the Civil Rights Act, "[a] Title VII workplace discrimination claim can only be brought by an employee against his employer." *Peppers v. Cobb Cnty., Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016); *see also Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994). Plaintiff pleads no facts alleging that he is an employee of either defendant.

meaning that Plaintiff would not be allowed to re-open or re-file this lawsuit.[4]

REPORTED on July 3, 2025.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.

---

[4] Litigating in federal court without an attorney is challenging. Plaintiff may wish to consult an attorney about his claims, and about the impact of a dismissal with prejudice on any future state court lawsuit. The Federal Bar Association offers the Legal Information Program, which provides free consultations to people litigating cases in federal court without lawyers. To set up an appointment, people can visit the Clerk's office, or call the office at 813-301-5400. And certain organizations, such as Bay Area Legal Services, may be able to offer free assistance to certain litigants.